IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RAYMOND J. SCOTT, *Appellant.*

No. 1 CA-CR 16-0348
FILED 9-12-2017

Appeal from the Superior Court in Maricopa County
No.  CR2013-461659
The Honorable Peter C. Reinstein, Judge
The Honorable Jose S. Padilla, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By David Andrew Simpson
*Counsel for Appellee*

Nicole T. Farnum, Attorney at Law, Phoenix
By Nicole T. Farnum
*Counsel for Appellant*

**OPINION**

Judge James P. Beene delivered the opinion of the Court, in which Presiding
Judge Diane M. Johnsen and Chief Judge Samuel A. Thumma joined.

**B E E N E**, Judge:

¶1          After having been found guilty of eight felony offenses, Raymond J. Scott ("Scott") argues on appeal (1) that he was convicted of two multiplicitous kidnapping charges and (2) that the superior court erred by allowing evidence of his prior conviction in Pennsylvania for aggravated indecent assault.  Scott asks that we vacate one kidnapping conviction as multiplicitous and vacate and remand for a new trial on the remaining charges.  Because there was a clear break in Scott's restraint of his victim, and because Scott's past act was properly admitted to show a lack of mistake under Arizona Rule of Evidence 404(b), we affirm Scott's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY[1]

¶2          In 1999, Scott sexually assaulted C.T., a former girlfriend with whom he was living in Pennsylvania.  Shortly after C.T. had ended their romantic relationship, Scott forced C.T. into her bedroom in their shared apartment, restrained her with duct tape, and sexually assaulted her.  Scott then immediately released C.T., gave her his gun, and threatened to stab her with a scalpel if she did not kill him.  After C.T. refused to shoot him, Scott allowed her to get dressed and leave, but threatened to kill himself if she spoke to the police.  C.T. left and called the police, who arrested Scott.  Scott was found guilty of aggravated indecent assault and sentenced to prison.

¶3          After his release, Scott moved to Arizona, where he met and later married M.N.  M.N. had a child from a previous marriage, D.N., and she and Scott had two other children during their time together, D.NS. and R.NS.  They divorced in 2011, but continued to share custody of their children.

¶4          On Christmas Day 2013, M.N. and the children gathered with Scott in his apartment to open presents.  While the children were busy with the gifts, Scott lured M.N. away and forced her into his bedroom.  There, Scott lifted his shirt to reveal a handgun in his pants and told M.N. he wanted to have sex.  M.N. refused, and Scott wrestled her to the bed, placed the gun to her head, and demanded that she perform sexual acts.  M.N. began crying, and D.N., her oldest child, heard her asking Scott to stop and

---

[1]          On appeal, we view the evidence in the light most favorable to sustaining the convictions and resolve all reasonable inferences against the defendant.  *State v. Karr*, 221 Ariz. 319, 320, ¶ 2 (App. 2008).

crying out in "actual pain." Eventually, D.N. forced open the bedroom door and saw Scott with his pants down, standing over M.N. on the floor.

¶5        M.N. managed to throw a cell phone to D.N. and yelled to her to take the other children and go for help. D.N. gathered R.NS., but not D.NS., left the apartment, and called her uncle. Meanwhile, as the struggle continued in the bedroom, Scott told M.N. he would "shoot everybody in here if you don't be quiet." When M.N. was able to throw the gun aside, Scott pulled out a knife and pressed it to her neck while he continued the assault.

¶6        M.N. finally escaped from Scott and ran out of the bedroom to the living room. M.N. intended to leave with her younger daughter, D.NS., but before she could gather her up, Scott knocked M.N. down, grabbed her by the legs, and dragged her back into the bedroom. There he continued to assault M.N. until help arrived.

¶7        The State charged Scott with fourteen counts — two counts of kidnapping, three counts of aggravated assault, three counts of sexual assault, three counts of attempted sexual assault, two counts of public sexual indecency to a minor, and one count of threatening or intimidating. After a ten-day trial, the jury convicted Scott of eight charges — three counts of aggravated assault, two counts of kidnapping, two counts of attempted sexual assault, and one count of threatening or intimidating. Scott was sentenced to an aggregate of 25 years in prison.

¶8        Scott timely appealed. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 13-4031 (2017).[2]

## DISCUSSION

### I.    Scott Was Properly Convicted of Two Counts of Kidnapping

¶9        Scott argues that his two kidnapping convictions are multiplicitous and violate his due process right against double jeopardy. A charge is multiplicitous if it charges a single offense in multiple counts and thereby raises the potential for multiple punishments for a single act. *State v. Brown*, 217 Ariz. 617, 620, ¶ 7 (App. 2008) (quoting *State v. Powers*, 200 Ariz. 123, 125, ¶ 5 (App. 2001), *aff'd* 200 Ariz. 363 (2001)). "Whether charges are multiplicitous is an issue of statutory interpretation, which we review

---

[2]        Absent material revision after the date of the alleged offense, we cite a statute's current version.

*de novo.*" *Brown*, 217 Ariz. at 620, ¶ 7. "Offenses are not the same, and therefore not multiplicitous, if each requires proof of a fact that the other does not." *Merlina v. Jejna*, 208 Ariz. 1, 4, ¶ 12 (App. 2004); *see Blockburger v. United States*, 284 U.S. 299, 304 (1932).

**¶10**        Kidnapping is defined as "knowingly restraining another person with the intent to . . . [i]nflict death, physical injury or a sexual offense on the victim[.]"  A.R.S. § 13-1304(A)(3).  At trial, the State argued to the jury that Scott committed two kidnappings, the first of which began when he initially forced M.N. into the bedroom and ended when she dashed from the bedroom to the living room, and the second of which began when Scott pulled her back into the bedroom, ending with her final escape.  Scott argues both kidnapping convictions arise out of the same act, restraining M.N. within his apartment.  He argues that, although M.N. was able to leave the bedroom for a brief time during the assault, she was continuously restrained within the apartment during the entire incident.

**¶11**        A defendant may be convicted of two counts of kidnapping "only if, after the original kidnapping concluded with the victim's release from restraint, the victim was restrained *anew*, with the requisite intent." *State v. Braidick*, 231 Ariz. 357, 360, ¶ 9 (App. 2013) (noting that "multiple charges might be authorized when a victim is released, but then restrained again.").  It is uncontested that Scott restrained M.N. intending to inflict a sexual offense.  Therefore, whether Scott was properly convicted of two counts of kidnapping turns entirely on whether he restrained M.N. continuously throughout the entire ordeal, or released her and restrained her anew.

**¶12**        A kidnapping remains an ongoing crime for only so long as the defendant maintains control of the victim, restraining the victim's freedom.  *See id.*, at 360, ¶ 11.  Restraint need not be accomplished by physical control, and "so long as the [victim feels] compelled by fear to remain, the confinement continue[s]." *State v. Jones*, 185 Ariz. 403, 407 (App. 1995) (citing *People v. Martinez*, 150 Cal.App.3d 579 (1984)).  Here, M.N. briefly escaped Scott midway through the ordeal, when she ran from the bedroom to the living room, and attempted to gather D.NS. to leave.  M.N. was momentarily free, but chose not to run directly out of the residence, instead pausing to grab her daughter.  M.N.'s choice of action and freedom of movement during that period showed Scott did not continue to restrain her, albeit briefly, after he initially forced her into his bedroom.  Scott then committed a second act of kidnapping, separate from the first, when he grabbed M.N. anew and pulled her back into the bedroom for the purpose

of sexual assault. For these reasons, Scott's convictions for two counts of kidnapping were not multiplicitous.

## II. The Superior Court Did Not Abuse Its Discretion in Admitting Scott's Prior Sexual Assault under Rule 404(b)

**¶13** The superior court admitted evidence of Scott's 1999 sexual assault crime under Arizona Rule of Evidence ("Rule") 404(b), reasoning that it showed an "absence of mistake or accident." The court gave a limiting instruction to the jury, stating the jury could only consider the evidence to establish Scott's intent, plan, or "absence of mistake or accident. You must not consider these acts to determine the defendant's character or character trait, or to determine that the defendant acted in conformity with the defendant's character or character trait and therefore committed the charged offense." Scott argues the superior court abused its discretion by admitting his prior sexual assault because it was unduly prejudicial under Rule 403.

**¶14** Generally, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Ariz. R. Evid. 404(b). The rule, however, states that evidence of other crimes, wrongs, or acts may be "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* The rule's "list of relevant purposes for which evidence of other crimes, wrongs or acts may be admitted is not exhaustive." *State v. Via*, 146 Ariz. 108, 122 (1985). Evidence of an act otherwise admissible under Rule 404(b) may be excluded if "its probative value is substantially outweighed by a danger of," among other things, "unfair prejudice[.]" Ariz. R. Evid. 403. We review the admission of prior act evidence under Rule 404(b) for abuse of discretion. *State v. Van Adams*, 194 Ariz. 408, 415, ¶ 20 (1999).

**¶15** At trial, the State argued, and the superior court agreed, that Scott's prior sexual assault was admissible under Rule 404(b) to refute his defenses of "consent" and "no specific intent." Rule 404(b) does not expressly authorize the admission of other act evidence to rebut consent or lack of specific intent defenses. But the examples listed in the rule are not exclusive. A defendant who claims his victim consented as a defense to sexual assault implicitly argues the victim gave him permission to engage in the sexual act. In such a case, evidence of other acts may be admitted to show the defendant knew otherwise. *See State v. Lamoureux*, 623 A.2d 9, 13 (R.I. 1993) ("[T]he issue of consent in a sexual-assault case is closely related to the exception absence of mistake set forth in Rule 404(b)." (internal

quotations omitted)).  More generally, a defendant who claims he lacked the necessary mental state may open the door to evidence of similar past wrongdoing under such factors as "proof of motive, . . . intent, preparation, [or] plan."  Ariz. R. Evid. 404(b); *see State v. Lee*, 189 Ariz. 590, 599 (1997) (determination of intent is "proper purpose" for admission of other crimes under Rule 404(b)); *State v. Huey*, 145 Ariz. 59, 62 (1985) (prior sexual assault admissible to show defendant's intent to assault victim against her will).

¶16          By raising the defenses of consent and no specific intent, Scott brought into contention his own intent.  Scott's prior sexual assault, strikingly similar in character to the current crime, was relevant to prove his intent and lack of mistake as to M.N.'s purported consent.  In each crime, Scott assaulted a previous partner, restrained her in a bedroom, menaced her with a weapon, and threatened to kill himself if she called the police. Evidence of the previous similar crime was not a mere inflammatory accusation against Scott; it was evidence that tended to prove he was not acting under a mistaken understanding that M.N. consented to his acts.  It is the State's burden to prove each element of a crime beyond a reasonable doubt and here, where Scott's intent was at issue, Scott's past act was relevant to prove that M.N. did not consent.

¶17          Scott argues, however, that evidence of the prior assault was unduly prejudicial under Rule 403.  Evidence that a defendant committed a serious crime similar to the one being tried is unquestionably prejudicial and may, at times, be unfairly so.  Even relevant evidence must be excluded if its probative value is substantially outweighed by a danger of unfair prejudice.  Ariz. R. Evid. 403.  That, however, was not the case here. Comparing the facts shown regarding the prior sexual assault and the charged offenses here, the identical nature of the victims' relationships with Scott and the similar nature of the crimes support the relevance of Scott's prior act.  *State v. Schurz*, 176 Ariz. 46, 52 (1993) (evidence which is "prejudicial" merely because it is relevant and material, while adverse to the opponent, is not barred by Rule 403).  The superior court did not abuse its discretion in concluding that the probative value of Scott's 1999 sexual

assault was not substantially outweighed by a danger of unfair prejudice and in allowing the past crime to be presented to the jury.[3]

## CONCLUSION

**¶18** For the foregoing reasons, we affirm Scott's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[3] The superior court admitted evidence of the prior sexual assault under both Rule 404(b) and Rule 404(c) ("Character evidence in sexual misconduct cases") and gave corresponding final jury instructions for Rule 404(b) and Rule 404(c) evidence. The proper consideration and use by the jury of evidence of a prior crime differs significantly depending upon whether it is admitted for a limited purpose other than "to prove the character of [the defendant] in order to show action in conformity therewith" under Rule 404(b), or "to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged" under Rule 404(c). Scott, however, did not object to the Rule 404(c) jury instruction and does not raise any Rule 404(c) issue on appeal. Because Scott has waived any Rule 404(c) issue, *see* Ariz. R. Crim. P. 31.13(c), we do not address any issue regarding the admission of the same evidence, with corresponding jury instructions, under both Rule 404(b) and 404(c).